UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Kenneth Fong,

     Plaintiff,

vs.

Brandon Auto Management LLC d/b/a Brandon Mitsubishi, and Brandon Auto Group LLC d/b/a Brandon Mitsubishi,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Kenneth Fong, hereinafter referred to as ("Plaintiff"), by and through his undersigned counsel, hereby sues the Defendants, Brandon Auto Management LLC d/b/a Brandon Mitsubishi and Brandon Auto Group LLC d/b/a Brandon Mitsubishi, hereinafter collectively referred to as ("Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to the Title VII, Retaliation, 42 U.S.C. § 2000, *et seq.* and 28 U.S.C. § 1331.

2. Venue lies within United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.     Plaintiff is a resident of Polk County, Florida.

4.     Defendant Brandon Auto Management LLC is a Florida limited liability company, Document No. L21000257109, with a registered agent of David Argy, 211 NW 5th Avenue, Hallandale Beach, Florida 33009, and is authorized to conduct business in Hillsborough County, Florida, operating an automobile dealership under the trade name Brandon Mitsubishi, located at 1730 W. Brandon Boulevard, Brandon, Florida 33511.

5.     Defendant Brandon Auto Group LLC is a Florida limited liability company, Document No. L20000206005, with a registered agent of David Argy, 211 NW 5th Avenue, Hallandale Beach, Florida 33009, and maintains its principal place of business at 1730 W. Brandon Boulevard, Brandon, Florida 33511, operating under the same trade name Brandon Mitsubishi at the same dealership location.

6.     At all relevant times, Defendants Brandon Auto Management LLC and Brandon Auto Group LLC were commonly owned, commonly managed, and operated as a single integrated enterprise. Both entities share the same registered agent, the same mailing address, and the same three individuals, David Argy, Yossef Cohen, and Mordi Kislasi, as authorized persons exercising managerial control. Both entities operate under the identical trade name Brandon Mitsubishi

2

at the same physical dealership location. Accordingly, both entities are jointly and severally liable as joint employers of Plaintiff and/or as alter egos of one another, and are collectively referred to herein as "Defendants" or "Brandon Mitsubishi."

7. Defendant is an employer as defined by the laws under which this action is brought and employs the required number of employees.

## ADMINISTRATIVE PREREQUISITES

8. All conditions precedent to bringing this action have occurred.

9. On November 28, 2024, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and Florida Commission on Human Relations (FCHR).

10. On February 5, 2026, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charge of Discrimination. This Complaint is filed within ninety (90) days of the issuance of the Dismissal and Notices of Rights.

11. More than 180 days have passed since the filing of the Charge of Discrimination.

## GENERAL ALLEGATIONS

12. At all times material, Plaintiff was qualified to perform his job duties within the legitimate expectations of his employer.

3

13. Plaintiff has been required to retain the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

14. Plaintiff requests a jury trial for all issues so triable.

## FACTUAL ALLEGATIONS

15. Plaintiff Kenneth Fong is an experienced automotive finance professional residing in Polk County, Florida, with decades of experience as a Finance Manager at multiple automobile dealerships throughout Florida, including Sutherlin Nissan, Lokey Auto Group, Vernon's Auto Group, and TKI St. Pete Mitsubishi.

16. Defendants Brandon Auto Management LLC and Brandon Auto Group LLC operate an automobile dealership in Tampa, Florida under the trade name Brandon Mitsubishi, and at all relevant times employed more than fifteen (15) employees.

17. At all relevant times, Gene Khaytin served as Defendants' General Manager and acted as Defendants' agent with full authority to hire, onboard, and terminate employees on Defendants' behalf.

18. Plaintiff previously engaged in protected activity under Title VII of the Civil Rights Act of 1964, including asserting and resolving a prior employment discrimination claim against a different automobile dealership.

19.    On or about March 6, 2024, Plaintiff contacted Defendants to inquire about an open finance manager position.

20.    Later that same day, Defendants' General Manager, Gene Khaytin, contacted Plaintiff by telephone to discuss the position and Plaintiff's qualifications.

21.    Mr. Khaytin invited Plaintiff to meet him in person the following day.

22.    On or about March 7, 2024, Plaintiff met with Mr. Khaytin at a Starbucks near Defendants' dealership in Brandon, Florida.

23.    During that meeting, Mr. Khaytin and Plaintiff discussed Defendants' business operations, the finance manager position, and Plaintiff's extensive experience and qualifications.

24.    On or about March 8, 2024, Mr. Khaytin contacted Plaintiff and offered him the finance manager position. Plaintiff accepted the offer of employment.

25.    Mr. Khaytin instructed Plaintiff to report to the dealership that same afternoon to complete all required new-hire onboarding paperwork and to prepare to begin work on Monday, March 11, 2024.

26.  Plaintiff complied and reported to Defendants' dealership on March 8, 2024, where he completed an extensive set of new-hire and employment documents, each of which evidences that Defendants had hired Plaintiff as an employee and treated him as such. Specifically, Plaintiff completed and signed each of the following documents on March 8, 2024:

a. *Employment Application* signed by Plaintiff on March 8, 2024, listing the position of "Finance Manager," a start date of March 11, 2024, and noting that Plaintiff was referred by "Gene," Defendants' own General Manager;

b. *Form I-9, Employment Eligibility Verification* the federally mandated employment eligibility form, signed by Plaintiff under penalty of perjury on March 8, 2024, attesting to his status as a United States citizen. The Form I-9 is legally required to be completed only upon hire and requires the employer to verify the employee's identity and work authorization within three business days of the employee's first day of employment;

c. *Form W-4, Employee's Withholding Certificate* the IRS federal income tax withholding form, signed by Plaintiff on March 8, 2024, for the purpose of directing Defendants, as Plaintiff's employer, to withhold the appropriate amount of federal income tax from Plaintiff's wages;

6

d. *Direct Deposit Authorization Form* signed by Plaintiff on March 8, 2024, authorizing Defendants to deposit Plaintiff's wages directly into his Wells Fargo bank account, including Plaintiff's account number and routing number;

e. *Employee Emergency Contact Form* completed by Plaintiff on March 8, 2024, listing his home address, home telephone number, and two emergency contacts. The form itself identifies Plaintiff's department as "Finance," further reflecting Defendants' treatment of Plaintiff as a hired employee assigned to a specific department;

f. *Amendment to Pay Plan* signed by Plaintiff as "Employee" on March 8, 2024, setting forth the terms governing Plaintiff's compensation, deal funding obligations, and chargeback policy, and establishing specific obligations between Defendants and Plaintiff in their employer-employee relationship; and

g. *Anti-Fraud and Ethics Policy Acknowledgment* signed by Plaintiff on March 8, 2024, acknowledging receipt of Defendants' internal policies prohibiting power booking, falsifying income, e-signing for customers, and other workplace conduct. This document expressly provides that violations of these policies "can lead to your termination," language that is by its nature directed exclusively at employees and that reflects Defendants' exercise of control over Plaintiff's conduct and continued employment.

27.     In addition to the foregoing signed documents, Defendants physically copied Plaintiff's government-issued Florida Driver's License and Social Security card, both of which are forms of identity verification required in connection with employment eligibility, not a mere job inquiry.

28.     Mr. Khaytin confirmed Plaintiff's start date and instructed Plaintiff to report for work on March 11, 2024, at 12:00 p.m.

29.     Over the weekend, Plaintiff and Mr. Khaytin exchanged text messages regarding dealership business, further confirming Plaintiff's employment status and the parties' employer-employee relationship.

30.     On March 11, 2024, Plaintiff reported to Defendants' dealership at the scheduled start time. Mr. Khaytin greeted Plaintiff upon arrival and advised him that he would be provided with passwords and system credentials to set up his office.

31.     While waiting, Plaintiff walked through the showroom area and was recognized by Christian Morell, a current employee of Defendants.

32.     Mr. Morell had previously worked with Plaintiff at another dealership and was aware of Plaintiff's prior protected activity involving a Title VII employment discrimination claim against that dealership.

33.     Upon recognizing Plaintiff, Mr. Morell immediately entered a restricted back area of the dealership where Mr. Khaytin was located.

34.    Within minutes of Mr. Morell speaking with Mr. Khaytin, Mr. Khaytin exited the back area and informed Plaintiff that there was an "issue" and instructed Plaintiff to leave and go home for the day.

35.    Plaintiff was told he would be contacted regarding when to return to work. Plaintiff promptly complied and left the dealership.

36.    Plaintiff followed up with Mr. Khaytin via text message seeking clarification regarding his employment status.

37.    The following day, Mr. Khaytin informed Plaintiff that Defendants were "going in a different direction."

38.    Plaintiff was not permitted to return to work and was effectively terminated on his first day of employment.

39.    Defendants' own onboarding records contain a handwritten notation on the back of Plaintiff's employment application stating: "3/11/24 — No Hire. Gene said will not begin/closed." This notation confirms that the decision to end Plaintiff's employment was made by Mr. Khaytin, Defendants' General Manager, on Plaintiff's very first day of work.

40. After being terminated, Plaintiff requested an explanation for Defendants' decision and advised Mr. Khaytin that he believed he had been discriminated against.

41. Mr. Khaytin refused to respond. Plaintiff later learned from a former General Manager of Defendants' dealership that Defendants decided not to proceed with Plaintiff's employment after learning that Plaintiff had previously "made a claim" against another dealership.

42. Defendants have since taken the position, both internally and in their submission to the EEOC, that Plaintiff was never hired and merely "inquired" about a position.

43. That claim is directly and thoroughly contradicted by Defendants' own records. Defendants offered Plaintiff the position, had Plaintiff complete seven separate new-hire documents, copied his government-issued identification and Social Security card, authorized direct deposit of his wages into his bank account, issued him a pay plan as an employee, subjected him to company policies that govern employee conduct and threaten termination for violations, assigned him to the Finance Department, confirmed his start date, and directed him to report for work, all on March 8, 2024, three days before Defendants claim he merely "showed up wanting information."

44.     Defendants' stated reasons for their decision were false, inconsistent, and pretextual. The temporal proximity between Mr. Morell's disclosure of Plaintiff's prior protected activity and Mr. Khaytin's immediate directive for Plaintiff to leave, within minutes of that conversation,  is compelling evidence that Defendants' decision was motivated by Plaintiff's prior protected activity.

45.      In the alternative, even if Defendants contend Plaintiff was not yet an employee, Defendants' decision to rescind Plaintiff's employment offer immediately upon learning of his prior protected activity constitutes unlawful retaliation under Title VII and the Florida Civil Rights Act.

46.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost employment opportunities, emotional distress, and other compensatory damages.

47.      Defendants' conduct was willful, reckless, and in callous disregard of Plaintiff's federally protected rights.

## COUNT I
## FLORIDA CIVIL RIGHTS ACT ("FCRA") – RETALIATION

48.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 47.

49.     Plaintiff suffered an adverse employment action for participating in a protected activity made unlawful by the Florida Civil Rights Act ("FCRA"), Chapter 760, *et seq., Florida Statutes*.

11

50.    The above-described acts of retaliation constitute a violation of the FCRA, Chapter 760, *et seq., Florida Statutes*, for which Defendants are liable.

51.    As a result of Defendants unlawful retaliation, Plaintiff has suffered and will to continue to suffer damages, including, but not limited to, the following:

      a.    Back pay and benefits;

      b.    Interest on back pay and benefits;

      c.    Front pay and benefits;

      d.    Interest on front pay and benefits;

      e.    Compensatory damages, including those for emotional pain and suffering;

      f.    Punitive damages;

      g.    Injunctive relief;

      h.    Attorney's fees and costs; and

      i.    All such other relief/damages to which Plaintiff is entitled.

## COUNT II
## TITLE VII – RETALIATION

52.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 47.

53.    Plaintiff suffered an adverse employment action for participating in a protected activity made unlawful by Title VII.

54.    The above-described acts of retaliation constitute a violation of Title

VII, 42 U.S.C. § 2000, *et seq.*

55. As a result of Defendants unlawful retaliation, Plaintiff has suffered and will to continue to suffer damages, including, but not limited to, the following:

    a. Back pay and benefits;

    b. Interest on back pay and benefits;

    c. Front pay and benefits;

    d. Interest on front pay and benefits;

    e. Compensatory damages, including those for emotional pain and suffering;

    f. Punitive damages;

    g. Injunctive relief;

    h. Attorney's fees and costs; and

    i. All such other relief/damages to which Plaintiff is entitled.

**DATED:** April 9, 2026

**FLORIN|GRAY**

/s/*Troy E. Longman II*
**Troy E. Longman II**
Florida Bar No.: 1031921
tlongman@floringray.com
Christopher D. Gray
Florida Bar No.: 0902004
cgray@floringray.com
16524 Pointe Village Drive, Suite 100
Lutz, FL 33558
Telephone (727) 220-4000

13

Facsimile (727) 483-7942
*Attorneys for Plaintiff*

14